JOURNAL ENTRY AND OPINION
{¶ 1} Darnell Carter appeals following a jury trial that convicted him on one count of failure to comply, one count of receiving stolen property, and one count of possession of criminal tools. He appeals claiming insufficient evidence, prosecutorial misconduct, erroneous admission of victim-impact statements and of a prior conviction, and ineffective assistance of counsel. We affirm the judgment, vacate the sentence and remand the case for resentencing.
 {¶ 2} The record reveals that in February 2004, Eric Powell drove his 1987 gray Buick LeSabre to work at Johnny's restaurant in downtown Cleveland. He arrived at approximately 7:00 a.m., and parked the car on the street. Two hours later, a co-worker alerted him that his car was missing, and Powell immediately notified the police.
 {¶ 3} Later that same day, police officers Jeffrey Yasenchack and Matt Payne were patrolling the area of East 55th and Woodland when they noticed a car crossing through the intersection with its high beams on, an apparent indicator that the car had been stolen and its steering column pulled back so as to permanently engage the car's high beams. The officers immediately activated their lights and sirens to pull the car over.
 {¶ 4} The car refused to stop and proceeded to travel down the wrong way of a one-way street, driving approximately 30- to 35-mph. The car continued to increase its speed, weaving in and around several one-way streets until the driver ultimately jumped from the moving car while traveling down East 61st Street. Officer Yasenchack proceeded to chase the driver on foot, and eventually caught up with him on a corner street in front of a house with a vehicle parked in the driveway. The officer approached the car and found Carter lying on his stomach underneath it and breathing heavily. He pulled him from the ground and took Carter to the abandoned stolen vehicle.
 {¶ 5} After arriving at the car, Carter explained to the officers that he was walking down Kinsman and saw several men surrounding a grey Buick. The men first offered Carter drugs, and when he refused, they offered to rent the car to Carter for ten dollars, which offer he accepted. He later recanted this story.
 {¶ 6} In March 2004, Carter was indicted on one count of failure to comply, R.C. 2921.331, one count of receiving stolen property, R.C.2913.51, and one count of possession of criminal tools, R.C. 2923.24. Following a jury trial in May 2004, he was found guilty on all counts and sentenced to two years on the first count, ten months on the second count, with the sentence to run consecutive to the first, and ten months on count three, with the sentence to run concurrent to count two. He appeals stating the assignments of error set forth in the appendix to this opinion.
Sufficiency of the Evidence
 {¶ 7} In his first assignment of error, Carter claims that the evidence presented at trial was insufficient to identify: that he was the driver of the stolen vehicle, that he had possession of the car, or that he possessed the screwdriver used to peel back the car's steering column.
 {¶ 8} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380, 390,1997-Ohio-52. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Statev. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 9} Carter was convicted on all three counts charged in the indictment. First, failure to comply with the order or signal of a police officer is defined by R.C. 2921.331 and provides in pertinent part:
"(B) No person shall operate a motor vehicle so as willfully to eludeor flee a police officer after receiving a visible or audible signal froma police officer to bring the person's motor vehicle to a stop."
 {¶ 10} The second count, possession of criminal tools, R.C. 2923.24, states in pertinent part:
"(A) No person shall possess or have under the person's control anysubstance, device, instrument, or article, with purpose to use itcriminally." (B) Each of the following constitutes prima-facie evidenceof criminal purpose: "(1) Possession or control of any dangerousordnance, or the materials or parts for making dangerous ordnance, in theabsence of circumstances indicating the dangerous ordnance, materials, orparts are intended for legitimate use;" (2) Possession or control of anysubstance, device, instrument, or article designed or specially adaptedfor criminal use; "(3) Possession or control of any substance, device,instrument, or article commonly used for criminal purposes, undercircumstances indicating the item is intended for criminal use."
 {¶ 11} The final count of receiving stolen property is defined in R.C. 2913.51 as:
"(A) No person shall receive, retain, or dispose of property of anotherknowing or having reasonable cause to believe that the property has beenobtained through commission of a theft offense. (B) It is not a defenseto a charge of receiving stolen property in violation of this sectionthat the property was obtained by means other than through the commissionof a theft offense if the property was explicitly represented to theaccused person as being obtained through the commission of a theftoffense."
 {¶ 12} Officer Yasenchack identified Carter as the man he chased and saw in the stolen vehicle, stating first that when Carter jumped from the moving car, he got a good look at him. Tr. at 84, 86. The officer also testified that Carter was wearing dark clothing, dark pants and a heavy jacket during the chase, and that Carter was wearing this same clothing when he was pulled from under the parked car. Tr. at 87, 90. Moreover, Officer Yasenchack chased Carter for approximately thirty seconds and Carter was only out of view for approximately five seconds. Tr. at 90.
 {¶ 13} After Carter was pulled from underneath the parked car, he was Mirandized. Carter then told the officers that when he rented the Buick from the two men on Kinsman, he specifically asked them whether the car was stolen. When he was advised that in fact it was stolen, Carter decided to rent it anyway. Tr. at 92.
 {¶ 14} As it relates to the possession charge, the testimony presented at trial was that the Buick was seen driving with its high beams on, an indication that, when the car was being stolen, its steering column was "peeled back" or opened with a screwdriver or similar object in such way that it could be driven without a key, and the high beams were then permanently engaged. Tr. at 78-79. Officer Yasenchack then testified that a flat head screwdriver was found on the driver's seat of the recovered vehicle. Tr. at 91.
 {¶ 15} Although Carter claims that the two officers approached him while he was walking on the street, this testimony is directly contradicted by Officer Yasenchack, who testified that immediately following the chase, he pulled Carter from underneath the vehicle. Tr. at 89. It was then for the jury to weigh the credibility of the witnesses. See State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 16} This assignment of error lacks merit.
II. Prosecutorial Misconduct
 {¶ 17} In his second assignment of error, Carter claims that during cross-examination, the prosecutor asked him to assess the truthfulness of Officer Yasenchack's testimony. He takes issue with the following questions:
"So the officer, when the officer stated that he had a conversationwith you and you indicated that you had gotten the car for ten dollars,that was a lie?" Tr. at 160
 "When the officer said he saw you and identified you getting out of thecar, he was lying?" Tr. at 161
 "When the officer said he chased you the course of a city block or twofrom 59th and 61st, that was a lie?" Tr. at 161.
 "So when he noted in his report that it was ten minutes to midnight,that was a lie? If he would have noted that in his report, that wouldhave been a lie? Tr. at 161.
 "What you want this jury to believe is that a convicted robber,convicted car thief, a person convicted of running from the police in anautomobile, that all those things, lying to the police, the wholethings, that you're telling the truth and that this officer is lyingabout basically everything that happened that night. That's what you wantus to believe as we sit here." Tr. at 163.
 {¶ 18} Carter also challenges a portion of the prosecutor's closing argument which states in relevant part:
"So let's talk about that. The defendant stated that there wereprobably five or six different specific lies that were told by the officerand I'll get into those on my closing close, but you need to think aboutthose. You're the judge's of credibility here. You heard about thedefendant's record. You've heard that he's run from the police in anautomobile before, that he's robbed people, that he's committed violentfelonies, that he's been to prison for extraordinarily long periods oftime, ten years.
 "We all know what a motive is. Look at the motive to lie. Who's got themotive to lie here? In your life, when you look and you judgecredibility, who's got a motive to lie? Does that officer of six years,does the detective of 16 years, do they have a motive to lie?: What dothey get out of it? And what do they risk by lying? What do they gainwhen they do something like that? They put their careers in the balanceand their lives in the balance. They've got a lot to lose if they'retelling something that's not true." Tr. at 184-185.
 {¶ 19} When outlining Carter's contention that he was visiting a friend ten minutes before his mandatory curfew at Harbor Lights, the prosecutor discusses the forty block distance between Carter's friend's house and Harbor Lights being an impossible distance to cross in ten minutes and states,
"That really can't be refuted." Tr. at 186.
 {¶ 20} The prosecutor then repeats Officer Yasenchack's testimony regarding the chase, and his two time identification of Carter and states:
"In order to believe the defendant's version of events, the officer hadto lie about ten different things." Tr. at 194-195.
 {¶ 21} The final contested statement is prefaced by the prosecutor's factual discussion regarding Carter's alleged statement to the officer after Carter was Mirandized, that he rented the car from two men on Kinsman and states:
"The officer lied about that, too?" Tr. at 195.
 {¶ 22} Whether remarks constitute prosecutorial misconduct requires analysis as to whether the remarks were improper, and, if so, whether the remarks prejudicially affected the accused's substantial rights. Statev. Smith (1984), 14 Ohio St.3d 13, 14. The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v.Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940. We will not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. State v. Treesh,90 Ohio St.3d 460, 464, 2001-Ohio-4.
 {¶ 23} The conduct of a prosecuting attorney during the course of trial does not constitute reversible error unless it is established that the prosecuting attorney's conduct deprived the defendant of a fair trial. State v. DePew (1988), 38 Ohio St.3d 275; State v. Vrona (1988),47 Ohio App.3d 145. Moreover, it is within the trial court's discretion to allow the prosecution, on cross-examination, to inquire whether another witness was lying. State v. Garfield (1986), 34 Ohio App.3d 300, see also State v. Curry, (Dec. 17, 1992), Cuyahoga App. No. 63438.
 {¶ 24} Moreover, we must consider the effect the misconduct had on the jury in the context of the entire trial. See Donnelly v. DeChristoforo
(1974), 416 U.S. 637, 643-645, 94 S.Ct. 1868; State v. Keenan (1993),66 Ohio St.3d 402, 410. Throughout his closing argument, the prosecutor consistently advised the jury that they were responsible for determining the credibility of the witnesses. Although the prosecutor pointed out that each of Carter's statements was directly contradicted by the officers' testimony, Carter has failed to provide evidence that the prosecutor's statements in any way deprived him of a fair trial. It is clear from the testimony presented at trial, that there was sufficient evidence to convict Carter, irrespective of the prosecutor's comments.
 {¶ 25} This assignment of error lacks merit.
Victim-impact Statements
 {¶ 26} In his third assignment of error, Carter claims error in the admission of statements made by the owner of the stolen car, Eric Powell. Although he cites to only a portion of Powell's testimony on direct examination, the relevant portions of the transcript are as follows:
"Q: And it's the same car — I just want to make sure. It's thesame car that you had left on the street that day is the car thatyou recovered and fixed.
 "A: Yes. I would have, personally, me, myself, I would have gotten ridof the car, but my wife has become attached to the car and by me takingher car that particular day, she wasn't happy about that and I just, youknow, did something for her, you know, per se, something I wouldn't havedone personally."
 "Q: Is there anything else that you think we need to know about thiscase?
 "A: The car is still running, but —
 "Q: Well, with the new engine?
 "A: But I don't drive it no more to work. Other than that, no. It'sjust been a little inconvenience for me, you know. Like today, I got towork at 5 o'clock to make up hours I'm missing coming down here. Butother than that, no." Tr. at 71-72.
 {¶ 27} Since Carter failed to object to these statements at trial, he has waived all but plain error on appeal. Crim.R. 52(B). Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Ohio Supreme Court found in State v. Barnes, 94 Ohio St.3d 21, 27,2002-Ohio-68, that
"[b]y its very terms, the rule places three limitations on a reviewingcourt's decision to correct an error despite the absence of a timelyobjection at trial. First, there must be an error, i.e., a deviation froma legal rule. * * * Second, the error must be plain. To be `plain' withinthe meaning of Crim.R. 52(B), an error must be an `obvious' defect in thetrial proceedings. * * * Third, the error must have affected `substantialrights.' We have interpreted this aspect of the rule to mean that thetrial court's error must have affected the outcome of the trial."(Internal Citations omitted.)
 "Even if a forfeited error satisfies these three prongs, however,Crim.R. 52(B) does not demand that an appellate court correct it.Crim.R. 52(B) states only that a reviewing court `may' notice plainforfeited errors; a court is not obliged to correct them. We haveacknowledged the discretionary aspect of Crim.R. 52(B) by admonishingcourts to notice plain error `with the utmost caution, under exceptionalcircumstances and only to prevent a manifest miscarriage of justice.'"Id., quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three ofthe syllabus.
 {¶ 28} Following Powell's testimony, Carter cross-examined him, specifically questioning him as to his knowledge of the charged crimes, of which Powell denied any knowledge. Rather, Powell's only statements were regarding his wife's attachment to the car and his revised work schedule, and these statements are not within the scope of victim impact evidence as contemplated by R.C. 2930.14, or the cases interpreting the statute. Although Carter cites State v. Fautenberry, 72 Ohio St.3d 435,1995-Ohio-209, for the proposition that victim-impact statements shall be considered by the trial court prior to sentencing, but not during the guilt phase of the proceeding, Fautenberry was a capital murder case in which the victim's families, employer, and arresting officer testified concerning the impact of the victim's death on the survivors.
 {¶ 29} This assignment of error lacks merit.
Ineffective Assistance of Counsel
 {¶ 30} In his fourth assignment of error, Carter argues that he was deprived of his constitutional right to the effective assistance of counsel because of counsel's failure to object to any claimed prosecutorial misconduct either during cross-examination or during closing, and also failed to object to Powell's alleged victim-impact statements made during his direct examination.
 {¶ 31} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard or reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378,388-389, 2000-Ohio-448, citing Strickland, supra, at 687-688.
 {¶ 32} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976),45 Ohio St.2d 71, at paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." Statev. Lytle (1976), 48 Ohio St.2d 391, (vacated on other grounds in Lytlev. Ohio (1978), 438 U.S. 910, 98 S.Ct. 3135); State v. Calhoun,86 Ohio St.3d 279, 289, 1999-Ohio-102.
 {¶ 33} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, at paragraph three of the syllabus; Strickland, supra, at 686. The failure to prove either prong of the Strickland two-part test makes it unnecessary for a court to consider the other prong. Madrigal, supra, at 389, citing Strickland, supra, at 697.
 {¶ 34} Because of our determination regarding the admissibility of victim-impact statements and our finding of no prosecutorial misconduct, we similarly find that this assignment of error lacks merit.
Evidence of a Prior Conviction
 {¶ 35} In his final assignment of error, Carter claims that the prosecution's introduction of Carter's prior convictions that occurred over ten years ago constituted reversible error.
 {¶ 36} Evid.R. 609 provides for impeachment by evidence of the conviction of a crime, and Evid.R. 609(A)(2) permits the evidence of prior convictions as a tool to attack defendant's credibility, and states in pertinent part:
"Notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B),evidence that the accused has been convicted of a crime is admissible ifthe crime was punishable by death or imprisonment in excess of one yearpursuant to the law under which the accused was convicted and if the courtdetermines that the probative value of the evidence outweighs the dangerof unfair prejudice, or confusion of the issues, or of misleading thejury."
 {¶ 37} Evid.R. 609(B), however, imposes time limits on the use of that information, and states:
"(B) Time limit. Evidence of a conviction under this rule is notadmissible if a period of more than ten years has elapsed since the dateof the conviction or of the release of the witness from the confinement,or the termination of probation . . . unless the court determines, in theinterests of justice, that the probative value of the convictionsupported by specific facts and circumstances substantially outweighs itsprejudicial effect. However, evidence of a conviction more than ten yearsold as calculated herein, is not admissible unless the proponent gives tothe adverse party sufficient advance written notice of intent to use suchevidence to provide the adverse party with the fair opportunity tocontest the use of such evidence."
 {¶ 38} Following his original convictions in CR-209412 and CR-209956 in 1986, Carter was sentenced to three- to fifteen-years, served three years and was placed on parole. Shortly after his release, he violated his parole in September 1990 when he pled guilty in CR-255933, and received a ten-year sentence, and pled in CR-248609, and received a one- and one-half-year sentence. He served a total of ten years.
 {¶ 39} Consistent with the language of the statute, Carter's earlier convictions would only be inadmissible if his probation had terminated ten years prior. Because of Carter's continual parole violations and continual confinement, the period of calculation did not begin until his probation terminated, or in other words, fewer than ten years prior, and therefore his earlier convictions were admissible at trial.
 {¶ 40} Moreover, even if this Court were to calculate the time of Carter's convictions from their date of offense, the trial judge nonetheless possesses broad discretion under Evid.R. 609 to determine the admissibility of prior convictions for impeachment purposes. State v.Wright (1990), 48 Ohio St.3d 5. Under Evid.R. 609, a prior conviction more than ten years old is inadmissable, unless a court makes a determination that the probative value of the conviction outweighs the prejudicial effects of its admission. State v. Fluellen (1993),88 Ohio App. 3d 18. Defense counsel issued a continuing objection to testimony of his prior convictions, which objection the judge continually overruled, thereby finding no prejudicial effect in their admission.
 {¶ 41} This assignment of error lacks merit.
Post-release Control
 {¶ 42} We note as plain error that although Carter was not advised at his sentencing hearing that post-release control was part of his sentence, the corresponding journal entry imposing sentence properly stated, "post release control is a part of this prison sentence for the maximum period allowed for the above felony(s) under R.C. 2967.28." Consistent with the Ohio Supreme Court's decision in State v. Jordan104 Ohio St.3d 21, 2004-Ohio-6085, Carter's sentence must be vacated and the case remanded to properly advise Carter of his entire sentence.
 {¶ 43} The judgment of the trial court is affirmed. Sentence vacated and remanded for a new sentencing hearing.
APPENDIX A:
 ASSIGNMENTS OF ERROR
 "I. THE APPELLANT HAS BEEN DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESSOF LAW, BY WHICH HIS CONVICTION IN THE CASE AT BAR WAS NOT SUPPORTED BYEVIDENCE SUFFICIENT TO PROVE GUILT BEYOND A REASONABLE DOUBT.
 "II. THE PROSECUTION COMMITTED MISCONDUCT BY REPEATEDLY ASKING THEDEFENDANT, DURING CROSS-EXAMINATION, TO ASSESS THE TRUTHFULNESS OF OTHERWITNESSES AND BY MAKING IMPROPER COMMENTS DURING CLOSING ARGUMENT.
 "III. MR. CARTER WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO A FAIRAND IMPARTIAL JURY BECAUSE THE JURY HEARD VICTIM-IMPACT STATEMENTS DURINGTHE GUILT/INNOCENCE PHASE OF THE TRIAL.
 "IV. TRIAL COUNSEL WAS INEFFECTIVE DUE TO A FAILURE TO OBJECT TOIMPROPER QUESTIONS BY THE PROSECUTOR, IMPROPER COMMENTS BY THE PROSECUTORDURING CLOSING ARGUMENTS, AND IMPROPERLY ADMITTED VICTIM-IMPACTSTATEMENTS. BY FAILING TO MAKE SUCH OBJECTIONS, THE TRIAL COUNSEL FAILEDTO PRESERVE THE ISSUES FOR APPELLATE PURPOSES.
 "V. THE TRIAL COURT IMPROPERLY ALLOWED THE JURY TO HEAR TESTIMONYREGARDING A PRIOR CONVICTION, THE PENALTY FOR WHICH EXPIRED MORE THAN TENYEARS AGO."
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., And McMonagle, J. concur.