OPINION
{¶ 1} Defendant-appellant, Michael Romano, appeals from a Youngstown Municipal Court judgment sentencing him to 60 days in jail after a jury found him guilty of assault and criminal damaging.
 {¶ 2} Appellant and his brother, Thomas Romano, are involved in a family-operated paving business known as Romano's Paving. Romano's Paving contracted with the Ohio Department of Transportation (ODOT) to pave certain areas in downtown Youngstown.
 {¶ 3} Blaine Daugherty is an employee of Labor Union International of North America. One of his duties included insuring worker safety at construction sites by investigating, documenting, and recording safety hazards.
 {¶ 4} On October 7, 2003, appellant and his brother were working on a job site on Rayen Avenue in Youngstown. Daugherty arrived at the job site in his company vehicle wearing an "Ohio Laborers" hard hat and a union shirt. Appellant noticed Daugherty videotaping alleged safety violations. He confronted Daugherty and words were exchanged. Daugherty testified that appellant punched him repeatedly. Appellant testified that Daugherty swung a knife at him. After appellant punched him, Daugherty fled and appellant allegedly continued to strike him. Appellant pulled the camera from Daugherty and threw it into the street, cracking it. The altercation eventually moved into the lot of a neighboring business where several employees attempted to remove appellant and Daugherty from the property. Appellant's brother then allegedly punched Daugherty.
 {¶ 5} The Youngstown Police Department arrived. The first officer on the scene testified that he observed appellant and his brother punching Daugherty. The officer arrested appellant for assault. Appellant was later charged with one count of assault, a first degree misdemeanor in violation of R.C. 2903.13(A), and one count of criminal damaging, a second degree misdemeanor in violation of R.C. 2909.06(A)(1). Charges were also filed against Thomas Romano.
 {¶ 6} The case proceeded to a joint jury trial. The state's witnesses testified that appellant and his brother were the aggressors in the assault, and Daugherty tried to flee and protect himself. The defense witnesses, including appellant, testified that Daugherty brandished a knife and lunged at appellant. At the conclusion of the evidence, the jury found appellant guilty as charged. However, it was unable to reach a verdict as to Thomas.
 {¶ 7} The trial court subsequently sentenced appellant to 180 days in jail, with 120 days suspended, and a $500 fine for assault. It sentenced him to 90 days in jail, all suspended, and a $250 fine for criminal damaging. The court also placed appellant on two years reporting probation. Appellant filed a timely notice of appeal. The court stayed appellant's sentence pending this appeal.
 {¶ 8} Appellant raises three assignments of error, the first of which states:
 {¶ 9} "THE APPELLANT'S RIGHT TO A FAIR TRIAL WAS PREJUDICED BY THE REPEATED MISCONDUCT OF THE ASSISTANT PROSECUTOR DURING THE COURSE OF TRIAL."
 {¶ 10} Appellant alleges that the prosecutor's conduct throughout the trial prejudiced his right to a fair trial.
 {¶ 11} Appellant first argues that during voir dire, the prosecutor attempted to shift the burden of proof onto the defense. Appellant further argues that the prosecutor misstated the law on self-defense, thus compounding the confusion regarding the burden of proof. Appellant contends that the prosecutor attempted to show the jury that if he claimed self defense, the state's burden had been met. He also points to the prosecutor's repeated references to a duty to retreat as error. Appellant argues the prosecutor's negligent or willful misstatement of the law shows misconduct. Appellant further asserts that the prejudicial effect of the prosecutor's misstatements was magnified by his improper use of hypothetical questions during voir dire.
 {¶ 12} The standard of review for prosecutorial misconduct is whether the comments and questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights. State v. Treesh
(2001), 90 Ohio St.3d 460, 480, 739 N.E.2d 749. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. State v. Lott (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Gapen, 104 Ohio St.3d 358,819 N.E.2d 1047, 2004-Ohio-6548, at ¶ 92, quoting Smith v. Phillips
(1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78.
 {¶ 13} During voir dire, the prosecutor stated, "[s]elf defense, that's the burden, if the Defense raises it, that's essentially them saying it happened, but we were justified, okay? They kind of alleviate, they make my burden a lot easier if they up and say, `Well, we did it, but we had an excuse justified by the law to do it.'" (Tr. 25). However, before making that statement, he stated, "I have the burden and my burden is reasonable doubt." (Tr. 25). And shortly after making the statement about self defense, the prosecutor again stated, "My standard is beyond a reasonable doubt." (Tr. 26). Thus, while the prosecutor's statement about self defense may have been somewhat misleading about the state's burden of proof, the prosecutor made sure to emphasize that the state's burden was guilt beyond a reasonable doubt.
 {¶ 14} As to the prosecutor's misstatement on law of self defense, the prosecutor did misstate the law. He stated that in order to prove self defense, the defendant had to show that he had an honest belief that he was in imminent danger of death or great bodily harm and that the only means of escape was by use of force. (Tr. 26-27). At this point, a sidebar was held. The prosecutor then stated to the jury, "I read it wrong. I misstated it. It's that they had an honest belief that they were in imminent danger of bodily harm, not death. I apologize." (Tr. 27). Thus, he corrected his error. The prosecutor again misstated the law by insinuating to the jury that there was a duty to retreat. (Tr. 27-29). This time, the court gave the jury a curative instruction on the proper law of self defense. (Tr. 33). And when the court concluded, the prosecutor again apologized to the jury for misstating the law. (Tr. 33).
 {¶ 15} In State v. Smith, 97 Ohio St.3d 367, 780 N.E.2d 221,2002-Ohio-6659, the appellant argued that the prosecutor improperly shifted the burden of proof by stating, "`that there can be no mitigating facts which outweigh the aggravating circumstances.'" Id. at ¶ 57. The Ohio Supreme Court held, while the statement was improper, the trial court's instructions as to the proper weighing process and its charge as to the precise aggravating circumstance cured any error. Id.
 {¶ 16} Here, as in Smith, the court properly instructed the jury on the relevant law and appellant does not assert that the jury instructions were improper. Although the issue in this appeal does not concern aggravating circumstances, applying the Smith rationale, the curative instruction and the final jury instructions given in this case cured any error the prosecutor may have created. Moreover, the jury is presumed to follow the instructions given to it by the judge. State v. Loza (1994),71 Ohio St.3d 61, 75, 641 N.E.2d 1082. Ultimately, the court's instructions cured any error and appellant is unable to demonstrate that the prosecutor's statements deprived him of a fair trial.
 {¶ 17} We next turn to the issue of the hypothetical. During voir dire, the prosecutor told the jury a hypothetical involving an assault case at a school where there were several witnesses on each side of the altercation. Appellant argues that the facts of the hypothetical were strikingly similar to the facts in the case at bar. He claims that the prosecutor erred by bringing up such a hypothetical. He relies onHuffman, where the Ohio Supreme Court stated:
 {¶ 18} "It is not proper, however, to submit hypothetical questions to the jurors in an effort to learn in advance what they will do in a supposed state of the evidence, or upon a supposed state of facts, and thus possibly commit them to certain ideas or views when the case shall be finally submitted to them for their discussion." State v. Huffman
(1912), 86 Ohio St. 229, 235, 99 N.E. 295.
 {¶ 19} Appellant did not object to the hypothetical presented to the jurors. Thus, he has waived all but plain error. Plain error is one in which but for the error, the outcome of the trial would have been different. State v. Long (1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804.
 {¶ 20} The hypothetical presented by the prosecutor was similar to the facts of this case. And while several of the questions the prosecutor asked the jurors after presenting the hypothetical focused on credibility, corroborating evidence, and sorting out evidence, he also asked if they would be able to find beyond a reasonable doubt that one child assaulted the other and whether anyone would find the child not guilty. It was not proper for the prosecutor to ask the latter questions. However, a review of the entire voir dire demonstrates that the jurors understood that it was their obligation to wait and hear the evidence before determining whether he was guilty. Therefore, we cannot conclude that the outcome of the trial would have been different had the prosecutor eliminated the hypothetical from his voir dire. (Tr. 232-4).
 {¶ 21} Appellant next argues that the prosecutor elicited hearsay during his redirect examination of Daugherty. Appellant asserts that Daugherty testified that he was an employee of a labor union, and his job was to ascertain the level of safety precautions implemented by the general contractor at various job sites. Further, appellant maintains that during cross-examination, Daugherty testified that each job required an ODOT inspection. In addition, Daugherty stated that ODOT filed a C-95 report. On redirect, Daugherty explained the contents of the C-95 report and how it related to the safety violations videotaped in this case. Appellant argues that Daugherty's testimony concerning the C-95 report was hearsay. Appellant asserts that the state used this hearsay testimony to bolster Daugherty's credibility. And therefore, it was offered for the truth of the matter asserted. Since this case hinges upon Daugherty's credibility, appellant contends that the state's use of hearsay testimony resulted in prejudice.
 {¶ 22} Again, appellant failed to object to the prosecutor's questions on re-direct examination. Thus, he has waived all but plain error.
 {¶ 23} On cross-examination, defense counsel questioned Daugherty about his qualifications for being at the Rayen Avenue job site and his ability to recognize safety violations. (Tr. 159-61). Daugherty testified that the safety violations he observed were noted in ODOT's C-95 report. (Tr. 160). On re-direct, the prosecutor then asked Daugherty about his qualifications. (Tr. 182-85). He then asked Daugherty what a C-95 report was. (Tr. 185). The prosecutor also asked whether some of the violations Daugherty videotaped were contained in the C-95 report. (Tr. 186).
 {¶ 24} Hearsay is an out-of-court statement, offered in court, to prove the truth of the matter asserted. Evid.R. 801(C). In this case, the prosecutor did not offer the contents of the C-95 report to prove the truth of the facts in the report. Instead, the prosecutor attempted to show that Daugherty was qualified to do safety inspections at job sites. Furthermore, Daugherty provided many examples of his qualifications and capacity as an employee throughout his testimony. (Tr. 38, 41, 42, 182-85). Thus, absent the testimony about the C-95 report, the outcome of the trial would not have been different.
 {¶ 25} Appellant next asserts that the prosecutor engaged in improper cross-examination of Mark Harmicar. He argues the prosecutor raised the inference that Harmicar had attempted to influence another witness's testimony. However, appellant contends, there was no evidentiary support to the state's assertion. Appellant argues that it was unprofessional to put information before the jury that is not in evidence under the pretext of asking questions. State v. Hunt (1994), 97 Ohio App.3d 372, 375,646 N.E.2d 889.
 {¶ 26} On cross-examination, the following exchange took place:
 {¶ 27} "Q Isn't it true you called Mr. Scavnicki the day before this trial was set to discuss this trial?
 {¶ 28} "A No.
 {¶ 29} "Q You did not?
 {¶ 30} "A No, not to discuss the trial, no.
 {¶ 31} "Q Did you speak with Mr. Scavnicki the day before the trial?
 {¶ 32} "A Yes, I did.
 {¶ 33} "Q Did you discuss the trial at all?
 {¶ 34} "A No.
 {¶ 35} "Q So if I bring him back in and ask him if you discussed this trial and you asked him to do what he could for the Romanos, that would be inaccurate?
 {¶ 36} "A Right. That would be inaccurate." (Tr. 443-44).
 {¶ 37} At no point during this questioning did appellant object. Therefore, once again, he has waived any objection absent plain error.
 {¶ 38} It was not plain error for the prosecutor to question Harmicar as to whether he had discussed the trial with another witness. The prosecutor was merely attempting to impeach Harmicar's credibility by questioning him about whether he and another witness had talked prior to trial regarding their testimony.
 {¶ 39} Appellant also argues that throughout trial, the prosecutor continually asked appellant and defense witnesses whether the state's witnesses were lying. Appellant asserts that by repeatedly asking each defense witness whether the state's witnesses were lying, the prosecutor attempted to invade the province of the jury to determine truthfulness. The parties had a conference in chambers after several objections and the court limited the scope of cross-examination. However, appellant argues it is impossible to correct such damage.
 {¶ 40} The trial court may permit the prosecution, on cross-examination, to inquire whether another witness was lying. In Statev. Garfield (1986), 34 Ohio App.3d 300, 303-304, 518 N.E.2d 568, the Eleventh District held that the court did not abuse its discretion in permitting the prosecutor to ask the appellant if prosecution witnesses were lying. And in State v. Carter, 8th Dist. No. 84816, 2005-Ohio-2179, at ¶ 23, the Eighth District stated, "it is within the trial court's discretion to allow the prosecution, on cross-examination, to inquire whether another witness was lying." Therefore, we cannot conclude that the prosecutor committed misconduct by questioning defense witnesses as to whether the state's witnesses were lying.
 {¶ 41} Accordingly, appellant's first assignment of error is without merit.
 {¶ 42} Appellant's second assignment of error states:
 {¶ 43} "THE APPELLANT WAS DENIED A FAIR TRIAL BASED UPON THE INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 44} Appellant asserts that defense counsel's failure to object to inadmissible hearsay testimony used to bolster Daugherty's credibility was ineffective assistance of counsel. State v. Nichols (1999),116 Ohio App.3d 759, 765, 689 N.E.2d 98. Appellant maintains that the state's case depended heavily on Daugherty's credibility because his testimony alone could prove the elements of assault. Since Daugherty's credibility was a central issue in this case, appellant contends that counsel's failure to object was ineffective assistance.
 {¶ 45} Appellant further argues that his counsel was deficient by allowing him to give a long narrative account of his recollection of events during direct examination. Appellant asserts that the court had to give hints to counsel on how to properly conduct the direct examination. (Tr. 377). Appellant maintains that allowing such a narrative cannot be considered a sound trial strategy and was prejudicial to his right to a fair trial.
 {¶ 46} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different.Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 47} Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279, 289,714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. Id.
 {¶ 48} While Daugherty's credibility was significant, as stated earlier, his testimony on re-direct examination was not hearsay. Therefore, counsel could not have been ineffective for failing to object to it. Furthermore, the state presented testimony from several other witnesses that identified appellant as the aggressor. Thus, counsel's failure to object to Daugherty's testimony did not likely affect the outcome of the trial.
 {¶ 49} We must also determine whether defense counsel was ineffective in allowing appellant to give a long narrative of his recollection of events. While allowing appellant to give a narrative may not have been the most effective way of presenting his testimony, it again does not appear that absent the narrative, there is a reasonable possibility that the outcome of the case would have been different. Appellant would have presented his recollection of the events one way or another, and the jury still had to make a determination as to who they believed. Since counsel is presumed competent, allowing the narrative did not amount to a deficiency that prejudiced appellant's case.
 {¶ 50} Accordingly, appellant's second assignment of error is without merit.
 {¶ 51} Appellant's third assignment of error states:
 {¶ 52} "THE IMPOSITION OF A JAIL SENTENCE WAS IN VIOLATION OF THE STATUTORY GUIDELINES FOR MISDEMEANOR SENTENCING."
 {¶ 53} In this assignment of error, appellant only takes issue with his sentence for his assault conviction. Appellant argues the court failed to consider the misdemeanor sentencing factors. Specifically, appellant points to the fact that he is unlikely to commit future offenses. Appellant also asserts that the court made no findings before sentencing him. Appellant maintains that since he does not have a criminal record, he is an ideal candidate for community control sanctions. And appellant contends the evidence demonstrated that the victim was not without culpability. Therefore, appellant contends, the court's imposition of a jail sentence upon a first time offender was not consistent with the principles of misdemeanor sentencing.
 {¶ 54} An appellate court reviews a trial court's sentence on a misdemeanor violation under an abuse of discretion standard. City ofYoungstown v. Glass, 7th Dist. No. 04-MA-155, 2005-Ohio-2785, at ¶ 4. InGlass we stated, "Subsection (A) [of R.C. 2929.22] provides that unless a mandatory jail term is required, the sentencing court has discretion to determine the most effective way to achieve the purposes and principles of misdemeanor sentencing when sentencing an offender." Id. at ¶ 5. Subsection (B) lists the factors a trial court must consider in determining the appropriate sentence. They are:
 {¶ 55} "(a) The nature and circumstances of the offense or offenses;
 {¶ 56} "(b) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;
 {¶ 57} "(c) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;
 {¶ 58} "(d) Whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious;
 {¶ 59} "(e) Whether the offender is likely to commit future crimes in general, in addition to the circumstances described in divisions (B) (1)(b) and (c) of this section." R.C. 2929.22(B)(1).
 {¶ 60} Absent from R.C. 2929.22, is any language that findings and reasons for sentencing must be stated "on the record." Glass, 7th Dist. No. 04-MA-155, at ¶ 17. The statute requires only that the trial court consider the factors listed. Id. In addition, where there is no indication to the contrary on the record, we can presume that the trial court considered the statutory factors when the sentence is within the statutory limit. State v. Crable, 7th Dist. No. 04-BE-17, 2004-Ohio-6812, at ¶ 24.
 {¶ 61} In this case, there is no indication on the record that the trial court failed to consider the statutory factors. Furthermore, in its judgment entry, the court stated that it considered the statutory sentencing criteria. It also noted that appellant presented evidence in mitigation of his sentence. And it stated that it considered the pre-sentence investigation.
 {¶ 62} The court sentenced appellant to 180 days in jail with 120 days suspended. The maximum sentence for a first degree misdemeanor is 180 days. R.C. 2929.24(A)(1). Because appellant's sentence is within the statutory period, there is no indication that the court did not follow the statutory guidelines, and the court is not required to state reasons for its findings, we will not conclude that the court abused its discretion in sentencing appellant. Accordingly, appellant's third assignment of error is without merit.
 {¶ 63} For the reasons stated above, the trial court's judgment is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.