JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Charles McCuller appeals from his convictions for robbery and drug possession. For the reasons set forth below, we affirm.
 {¶ 2} On August 27, 2004, defendant was indicted pursuant to a two-count indictment. Count One charged defendant with robbery in violation of R.C. 2911.02 with three notices of prior convictions in connection with convictions from 1980, and three repeat violent offender specifications. Count Two charged defendant with possession of drugs in violation of R.C. 2925.11. Defendant pled not guilty and the matter proceeded to a jury trial as to the charges set forth in Counts One and Two on March 24, 2005, and the specifications were tried to the court.
 {¶ 3} The state presented the testimony of Judith Gainer, Cleveland Police Officer Thomas R. Barnes, and Cleveland Police Det. Robert Pirinelli.
 {¶ 4} Judith Gainer testified that she is a retired medical secretary who had worked at the Cleveland Clinic. Gainer presently resides in Florida but had lived on West 172 Street in Cleveland. Defendant moved in with her for approximately one month in June 2004. After several weeks, however, she asked him to leave after he began staying out all night and told her that he had been taking heroin. According to Gainer, on July 9, 2004, defendant returned to her home after being away for several days, and she asked him to leave. They argued and defendant became violent, and choked her. He then left the room to take a shower and Gainer went outside and called police from her cordless phone.
 {¶ 5} Gainer further testified that she had hidden the keys to her car under her bed and defendant did not have permission to use it. Moments later, defendant found the keys, grabbed his clothes and started Gainer's car. Gainer stood in the driveway to prevent defendant from leaving but he "barreled the car down the driveway" and Gainer jumped away to keep from being struck. She also established that the car was eventually recovered and she still has it and uses it.
 {¶ 6} On cross-examination, defendant's trial counsel asked Gainer if she met defendant when he was "still in prison" and she admitted that she had. She further acknowledged, under defense questioning, that she had corresponded with him for months, was aware of his addiction, and that after he moved in with her, she had at times, permitted him to use her car.
 {¶ 7} On redirect, Gainer testified that defendant told her that he was jailed for a probation violation but she later learned that he had three rape convictions.
 {¶ 8} Officer Barnes testified that on the evening of July 14, 2004, he and his partner were investigating a juvenile complaint on East 118th Street when Barnes observed a red four-door Saturn with a back door that was not properly closed. Barnes checked the license plate and determined that the vehicle had been stolen. Barnes advised the driver that the car was stolen. He confiscated the keys and learned that defendant had given the driver the car and that defendant was at a nearby home.
 {¶ 9} Barnes and his partner arrived at this location and spoke to 74 year-old Margaret McCuller. According to Barnes, Ms. McCuller told them that defendant was not there but "invited us in to look around to check for ourselves." The officers opened the door to a back bedroom and found defendant smoking crack with his cousin Valerie.
 {¶ 10} Barnes recovered a crack pipe which he observed defendant hold to his mouth then place near his leg. They recovered additional crack from Valerie's purse. Less than five grams of cocaine was recovered from the pipe.
 {¶ 11} Det. Pirinelli testified that he interviewed the defendant in jail and defendant admitted that he "had the car from Miss Gainer," and gave it to some males for crack. He claimed that Gainer wanted him to get rid of the car for insurance purposes. Det. Pirinelli asked defendant why he did not "just do the insurance job" and he indicated that he wanted drugs. Finally, Det. Pirinelli testified that he did not investigate the alleged "insurance job" further because defendant could not supply any information to corroborate this claim.
 {¶ 12} On cross-examination, Det. Pirinelli denied that defendant told him that Gainer had committed insurance fraud with a prior vehicle and on redirect questioning, stated that he did not find defendant to be credible due to his past record and other reasons.
 {¶ 13} Defendant elected to present evidence and testified that he worked for Premier Asphalt Paving and is addicted to heroin. With regard to his prior record, the convictions are twenty-five years old and occurred when he was sixteen. As to the offenses at issue, he stated that he came home staggering drunk at 2:00 a.m., then slept on the couch. When he awoke, Gainer was angry about his drinking and drug use and the fact that he did not meet her old friend Ron regarding having someone steal her car.
 {¶ 14} He then took the keys from the night stand in the bedroom and drove away to buy a toothbrush and something to eat. According to defendant, Gainer was not in the driveway at the time he left. He returned to the area a short time later but panicked when he saw police cars there.
 {¶ 15} With regard to the drug offense, defendant reiterated that he is a heroin addict and does not smoke crack. He acknowledged on cross-examination, however, that he told Officer Barnes that he had given Gainer's car away for crack.
 {¶ 16} Defendant was subsequently convicted of both offenses and the prior conviction specifications. The trial court sentenced him to a six-year term of imprisonment on the robbery conviction and a concurrent twelve-month term of imprisonment for the drug possession conviction. Defendant now appeals and assigns four errors for our review.
 {¶ 17} Defendant's first assignment of error states:
 {¶ 18} "Prosecutorial misconduct denied Appellant his constitutional right to a fair trial."
 {¶ 19} Within this assignment of error, defendant complains that at the time of trial the prosecuting attorney was permitted to add a new and unsubstantiated allegation that he attempted to inflict physical harm at the time of the theft. He further complains that the prosecuting attorney was permitted to inquire about his parole violations, that he went to the victim's home after getting released from prison and that Det. Pirinelli did not find the "insurance job" defense to be credible. Finally, defendant complains that during her cross-examination of him the prosecuting attorney repeatedly asked whether the state's witnesses were lying.
 {¶ 20} As an initial matter, we note that a prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial.State v. Keenan (1993), 66 Ohio St.3d 402, 402-405,613 N.E.2d 203; State v. Gest (1995), 108 Ohio App.3d 248, 257,670 N.E.2d 536. The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982),455 U.S. 209, 71 L.Ed.2d 78, 102 S.Ct. 940. The effect of the prosecutor's misconduct must be considered in light of the whole trial. State v. Durr (1991), 58 Ohio St.3d 86, 94,568 N.E.2d 674. {¶ 21} As to defendant's first claim, i.e., that he had no notice that he would be required to defend against the claim that he "inflicted or attempted to inflict physical harm." This claim is wholly without merit.
 {¶ 22} Robbery is defined in R.C. 2911.02 as follows:
 {¶ 23} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * *
 {¶ 24} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another; (B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree."
 {¶ 25} In this matter, Count One of the indictment charged that defendant committed robbery and states that "in attempting or committing a theft offense or in fleeing immediately after the attempt or offense upon Judith Ann Gainer, [he did] inflict, attempt to inflict, or threaten to inflict physical harm on Judith Ann Gainer."
 {¶ 26} Defendant was clearly given adequate notice.
 {¶ 27} With regard to defendant's contention that the prosecuting attorney acted improperly in inquiring about defendant's parole violations, and criminal record, we note that defendant's trial counsel brought up the issue of defendant's imprisonment during his cross-examination of Gainer and his questioning. Defense counsel elicited from the witness that they had corresponded while defendant was in prison and that Gainer had permitted him to live at her home upon his release. Thus, defendant's trial counsel "opened the door" to the introduction of this evidence and no prosecutorial misconduct occurred. Statev. Dixon, 152 Ohio App.3d 760, 2003-Ohio-2550, 790 N.E.2d 349.
 {¶ 28} As to defendant's next claim that the prosecuting attorney committed misconduct by eliciting from Det. Pirinelli that he did not believe defendant's claim that Gainer had asked him to get rid of the car as an insurance scam, we again note that it was defendant's trial counsel who raised the issue of the detective's failure to investigate this claim which would presumably tend to show that defendant had the vehicle with Gainer's permission. Having "opened the door," i.e., having raised this claim for the jury's consideration, defendant may not now claim prosecutorial misconduct in connection with the state's presentation of additional evidence which explained why the detective did believe defendant's "insurance job" claim. Statev. Dixon, supra.
 {¶ 29} Finally, with regard to defendant's contention that the prosecuting attorney committed misconduct in her cross-examination of him by repeatedly asking whether the state's witnesses were lying, we note that in State v. Romano, Case No. Mahoning App. No. 04-MA-148, 2005-Ohio-5480, the court stated:
 {¶ 30} "The trial court may permit the prosecution, on cross-examination, to inquire whether another witness was lying. In State v. Garfield (1986), 34 Ohio App.3d 300, 303-304,518 N.E.2d 568, the Eleventh District held that the court did not abuse its discretion in permitting the prosecutor to ask the appellant if prosecution witnesses were lying. And in State v.Carter, 8th Dist. No. 84816, 2005-Ohio-2179, at P. 23, the Eighth District stated, "it is within the trial court's discretion to allow the prosecution, on cross-examination, to inquire whether another witness was lying." Therefore, we cannot conclude that the prosecutor committed misconduct by questioning defense witnesses as to whether the state's witnesses were lying."
 {¶ 31} Accordingly we find no prejudicial error.
 {¶ 32} The first assignment of error is without merit.
 {¶ 33} Defendant's second assignment of error states:
 {¶ 34} "The trial court erred when it permitted testimony of other criminal acts, or wrongs, attributed to Defendant-Appellant to be introduced without objection and by its failure to give a limiting instruction during the course of the trial and in the general charge to the jury, the purposes for which evidence presented by the prosecutor could be used."
 {¶ 35} Defendant next complains that the prosecuting attorney improperly introduced evidence concerning defendant's three rape convictions from 1980, and sexual predator adjudication which, defendant insists, stem from acts which occurred when he was a juvenile. He also complains that the prosecuting attorney introduced evidence of his parole violations.
 {¶ 36} Evid.R. 404(B) provides that evidence of other acts is not admissible to prove the character of a person in order to show that the accused acted in conformity therewith. Evidence of other bad acts is generally prejudicial and generally is prohibited by Evid.R. 404(B). See, e.g., State v. Curry (1975),43 Ohio St.2d 66, 68-69, 330 N.E.2d 720.
 {¶ 37} Generally, "an accused cannot be convicted of one crime by proving he committed other crimes or is a bad person."State v. Jamison (1990), 49 Ohio St.3d 182, 552 N.E.2d 180. Consequently, "evidence of other crimes, wrongs or bad acts independent of, and unrelated to, the offenses for which a defendant is on trial is generally inadmissible to show criminal propensity." Id.
 {¶ 38} However, "the admission or exclusion of relevant evidence rests within the sound discretion of the trial court."State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus; see, also, State v. Bey,85 Ohio St.3d 487, 490, 1999-Ohio-283, 709 N.E.2d 484. Where an error in the admission of evidence is alleged, appellate courts do not interfere unless it is shown that the trial court clearly abused its discretion. State v. Maurer (1984), 15 Ohio St.3d 239,473 N.E.2d 768. Thus, the admission or exclusion of evidence, including the admission of other acts evidence, lies within the trial court's sound discretion. State v. Bey, supra.
 {¶ 39} Finally, we note that any objection to "other acts" evidence is waived where it is first brought out on cross-examination by a defendant's attorney. State v. Waver
(Aug. 19, 1999), Cuyahoga App. No. 73976; State v. Hartford
(1984), 21 Ohio App.3d 29, 486 N.E.2d 131.
 {¶ 40} In this matter, we again note that it was defendant's trial counsel who raised these issues by cross-examining Gainer about meeting defendant while he was in prison and eliciting testimony that she corresponded with him and invited him to live in her home upon his release. Defendant therefore cannot now complain that the court erred in permitting introduction of this testimony. Further, after defendant testified, the trial court could, within its discretion, permit the state to cross-examine him about the convictions in the general division following bind-over from juvenile court. Evid.R. 609(A). This assignment of error is overruled.
 {¶ 41} Defendant's third assignment of error states:
 {¶ 42} "Defendant-Appellant was denied the effective assistance of counsel in violation of the Sixth andFourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 43} Within this assignment of error, defendant complains that his trial counsel did not file a motion to suppress evidence in connection with the evidence obtained from Ms. McCuller's home, did not "call known witnesses" to testify at trial, did not object to prejudicial other acts evidence and opened the door to introduction of defendant's prior criminal record.
 {¶ 44} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing Strickland v. Washington,
supra at 687-688.
 {¶ 45} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; Stricklandv. Washington, supra, at 686. The failure to prove any one prong of the Strickland two-part test makes it unnecessary for a court to consider the other prong. State v. Madrigal, supra, at 389, citing Strickland v. Washington, supra, at 697.
 {¶ 46} A debatable decision involving trial tactics generally does not constitute a deprivation of effective counsel. State v.Phillips, 74 Ohio St.3d 72, 656 N.E.2d 643, 1995-Ohio-171. InState v. Clayton (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189, the Ohio Supreme Court discussed an attorney's choice of trial strategy and stated the following:
 {¶ 47} "* * * the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client."
 {¶ 48} With regard to the contentions raised herein, we note that "[f]ailure to file a motion to suppress does not constitute per se ineffective assistance of counsel." State v. Madrigal,
supra. Moreover, counsel is not required to perform a futile act.State v. Martin (1983), 20 Ohio App. 3d 172, 174,485 N.E.2d 717; State v. Lodge, Greene App. No. 2004 CA 43,2005-Ohio-1908; State v. Davis, Butler App. No. CA2001-05-108, 2002-Ohio-865. In this matter, the unrefuted evidence indicated that Ms. McCuller told Officer Barnes that defendant was not there but "invited us in to look around to check for ourselves." The officers opened the door to a back bedroom and found defendant smoking crack with his cousin Valerie. The record therefore indicates that the initial search was consensual,State v. Sneed (1992), 63 Ohio St.3d 3, 7, 584 N.E.2d 1160, and the subsequent discovery of defendant smoking crack occurred within the officer's plain view. Harris v. United States
(1968), 390 U.S. 234, 236, 19 L.Ed.2d 1067, 88 S.Ct. 992. The filing of a motion to suppress would have been futile under these circumstances and defendant's trial counsel was not ineffective for failing to do so.
 {¶ 49} As to defendant's claim that his trial counsel did not "call known witnesses" to testify at trial, there is no basis in the record from which we may conclude who such witnesses are, the substance of their testimony, much less determine that prejudice has resulted. This claim is without merit. See United States v.Moes, (C.A. 6) 27 Fed. Appx. 418.
 {¶ 50} Regarding defendant's final contentions that his trial court was ineffective for failing to object to other acts evidence and for opening the door to introduction of his criminal record, we find that it was a debatable trial strategy to raise these matters in cross-examination of Gainer and in anticipation of defendant later testifying on his own behalf.
 {¶ 51} The third assignment of error is without merit.
 {¶ 52} Defendant's fourth assignment of error states:
 {¶ 53} "Defendant-Appellant's convictions are against the manifest weight of the evidence."
 {¶ 54} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, reviews the factfinder's resolution of the evidence and considers whether the jury "lost its way." State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The Thompkins
Court explained:
 {¶ 55} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 {¶ 56} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 57} In this matter, Gainer testified that defendant did not have permission to take her car following their argument and that he found the car keys which she had hidden. She further testified that he took the car and sped down the driveway as she stood there to block him from leaving. Officer Barnes testified that he observed Gainer's car while investigating another incident and that the occupants of the car told him of defendant's whereabouts. Later, he spoke to Ms. McCuller who told him that defendant was not there and let him look for himself. At this time, he observed defendant and his cousin Valerie smoking crack cocaine. Our review of the entire record leads us to conclude that the jury did not lose its way and did not create a manifest miscarriage of justice in convicting defendant of the offenses in this matter. The testimony of Gainer, Officer Barnes and Det. Pirinelli was detailed, clear, and consistent. Defendant's testimony, however, was illogical in that he denied using crack cocaine yet admitted that he exchanged Gainer's car for crack. He claimed he took the car with Gainer's permission in furtherance of an insurance fraud scheme, yet he had no information regarding any details of the scheme and was still in possession of the car for five days until he exchanged it for drugs. Accordingly, we conclude that the jury correctly determined that the greater amount of credible evidence supports the evidence offered by the state and the convictions are not against the manifest weight of the evidence.
 {¶ 58} The convictions are not against the manifest weight of the evidence.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., and Blackmon, J., concur.