JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Terry Fleming appeals his convictions for two counts of drug trafficking, one count of drug possession, and one count for failure to comply with the order or signal of a police officer. Fleming assigns six errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm Fleming's convictions. The apposite facts follow. *Page 3 
 {¶ 3} Fleming was indicted on one count of possession of drugs, two counts of drug trafficking, one count of possession of criminal tools, two counts of felonious assault of a peace officer, two counts of assault of a peace officer, and one count for failing to comply with an order or signal of a police officer.
 Jury Trial {¶ 4} On December 21, 2005, the Cleveland Narcotics Unit conducted a controlled buy using a confidential reliable informant (CRI). The CRI told officers he could arrange to buy a half-ounce of crack cocaine from a man he knew as "T" and provided the officers with "T's" cell phone number.
 {¶ 5} The CRI called "T" to arrange the buy. The agreed upon price for the half-ounce of cocaine was $550. "T" instructed the CRI to proceed to East 79th Street and St. Clair Avenue and then call back. Detective Scott Moran searched the CRI, equipped him with a body wire, and provided him with marked "buy" money. They then proceeded to the meeting place where the CRI again called "T." "T" told him he was in a Nissan Maxima. Detective Moran observed a Nissan Maxima pull into the parking lot across the street about sixty feet away from them.
 {¶ 6} The CRI exited the car and entered the Maxima. The detective could not see what was occurring in the car, but could see that in addition to the CRI, two other people were in the vehicle. The detective heard the CRI and one other voice discussing money and then heard the money being counted. Once the CRI exited *Page 4 
the vehicle and pulled up the hood of his jacket, which was the visual signal that the transaction was complete, the detective called for back-up. When the CRI returned to the vehicle, the detective retrieved the half-ounce of cocaine from him.
 {¶ 7} Detective Baeppler testified he was part of the take-down unit. He and his partner were in an unmarked car that was equipped with a siren and a blue light, which they placed on top of the vehicle. As they attempted to go around the left side of the Maxima to box it in, the Maxima pulled forward and a chase ensued down East 76th
Street. Eventually, the detectives were able to stop the Maxima due to the fact a moving van was obstructing part of the street. However, the Maxima veered into Detective Baeppler's car as it tried to get around the van, causing minimal damage to the detective's car.
 {¶ 8} The passenger in the car, Troy Friar, was searched; nothing was found on his person. Terry Fleming was identified as the driver of the car. A pat-down search of his person revealed a cell phone and $631 in cash in his front right pocket, $550 of which matched the marked currency. The cell number on the cell phone matched the number the CRI called to set up the deal. The cell phone also contained the CRI's cell phone number in its last dialed number directory.
 {¶ 9} Terry Fleming testified in his own defense. He admitted that a drug deal was conducted in his car, but claimed Friar set up the deal without his involvement. He claimed the money was in his pocket because he jokingly took it from Friar and *Page 5 
placed it in his pocket. He also claimed the cell phone was not his and was not recovered from his pocket, but was recovered from the car.
 {¶ 10} The jury found Fleming guilty of possession of drugs, two counts of drug trafficking, and failure to comply with the order or signal of a police officer. He was acquitted of the remaining charges. The trial court sentenced him to a total of eight years.
 Identity of Confidential Informant {¶ 11} In his first assigned error, Fleming argues that the trial court erred in refusing to order the state to disclose the identity of the CRI. We disagree.
 {¶ 12} A trial court's decision regarding the disclosure of the identity of an informant will not be reversed absent an abuse of discretion.[2] An abuse of discretion is defined as a decision that is unreasonable, arbitrary, or unconscionable, rather than a mere error in judgment.[3]
 {¶ 13} The factors to be considered when determining whether the identity of an informant should be disclosed are (1) whether the informant's testimony is vital to establishing an essential element of the offense charged, or (2) whether the *Page 6 
informant's testimony is helpful or beneficial to the accused in preparing a defense.[4] If the informant's degree of participation is such that the informant is essentially a state's witness, the balance tilts in favor of disclosure.[5] However, where disclosure is not helpful to the defense, the prosecution need not reveal the informant's identity.[6] The defendant bears the burden of establishing the need for revealing the informant's identity.[7]
 {¶ 14} Here, Detective Moran testified that he searched the CRI prior to the transaction, provided the CRI with marked currency, watched the CRI get into the Maxima, and then immediately obtained from the CRI the purchased half-ounce of crack cocaine. Detective Baeppler testified that when he searched Fleming, a cell phone and $631 in cash were retrieved from Fleming's front shirt pocket. $550 of the recovered money was the marked currency provided to the CRI. The cell phone's number matched the number the CRI called to arrange the transaction and also contained the CRI's cell phone number in its last dialed number directory. Moreover, the tape recording of the transaction was played to the jury, and they *Page 7 
heard Fleming speak when he testified. Therefore, they could conclude if his voice matched the voice on the tape.
 {¶ 15} Accordingly, disclosure of the CRI's identity was not necessary to establish any essential element of the offenses charged.[8]
Moreover, Fleming failed to make any showing that disclosure of the CRI's identity would be helpful in preparing his defense. Thus, the trial court did not abuse its discretion by not ordering the state to reveal the identity of the informant. Accordingly, Fleming's first assigned error is overruled.
 Prosecutorial Misconduct {¶ 16} In his second assigned error, Fleming argues the prosecutor engaged in misconduct by asking him improper questions on cross-examination. He argues it was improper for the prosecutor to question him as to his opinion regarding the truthfulness of Detective Baeppler's testimony regarding the facts surrounding the car chase.
 {¶ 17} We initially note that counsel failed to object to this line of questioning. Therefore, absent plain error, he has waived the issue on appeal. Plain error does not exist unless the appellant establishes that the outcome of the trial clearly would *Page 8 
have been different but for the trial court's allegedly improper actions.[9] We conclude plain error did not occur.
 {¶ 18} This court has held that it is within the trial court's discretion to allow the prosecution, on cross-examination, to inquire whether another witness was lying.[10] In State v. Romano[11], the Seventh District explained:
 "The trial court may permit the prosecution, on cross-examination, to inquire whether another witness was lying. In State v. Garfield (1986), 34 Ohio App.3d 300, 303-304, 518 N.E.2d 568, the Eleventh District held that the court did not abuse its discretion in permitting the prosecutor to ask the appellant if prosecution witnesses were lying. And in State v. Carter, 8th Dist. No. 84816, 2005 Ohio 2179, at P.23, the Eighth District stated, It is within the trial court's discretion to allow the prosecution, on cross-examination, to inquire whether another witness was lying.' Therefore, we cannot conclude that the prosecutor committed misconduct by questioning defense witnesses as to whether the state's witnesses were lying."
 {¶ 19} Accordingly, we conclude the prosecutor's line of questioning did not constitute misconduct. Fleming's second assigned error is overruled.
 Insufficient Evidence *Page 9 {¶ 20} In his third assigned error, Fleming argues the evidence was insufficient to convict him because there was no evidence he ever possessed the cocaine, transported the cocaine, or sold the cocaine.
 {¶ 21} The sufficiency of the evidence standard of review is set forth in State v.
 {¶ 22} Bridgeman[12]:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[13]
 {¶ 23} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[14] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 24} In the instant case, circumstantial evidence was provided that Fleming was the person who transported the drugs to the scene and sold them to the CRI. Although the detective could not see the actual hand-to-to hand transaction, he *Page 10 
searched the CRI prior to the drug buy and provided him with marked currency. After exiting Fleming's car, the CRI had a half-ounce of cocaine. A post-arrest search of Fleming also revealed he had a cell phone with the number the CRI called, and also the CRI's number was listed as a dialed number on the cell phone. The marked money was also recovered from Fleming's pocket.
 {¶ 25} Although Fleming contends the cell phone was not on his person, and that he placed the marked money in his pocket as joke, the jury is in the best position to determine credibility. The trier of fact is in the best position to observe the witness's demeanor, voice inflection, and mannerisms in determining each witness's credibility.[15]
Therefore, on issues of credibility, we defer to the jury. Accordingly, Fleming's third assigned error is overruled.
 Ex Post Facto Sentence {¶ 26} In his fourth assigned error, Fleming argues that because his criminal conduct pre-dated Foster, any retroactive application ofState v. Foster[16] is a violation of the ex post facto clause.
 {¶ 27} We reject his argument in light of this court's decisions regarding this identical argument.[17] In those decisions, we concluded Foster did not judicially *Page 11 
increase the range of a defendant's sentence, did not retroactively apply a new statutory maximum to an earlier committed crime, and did not create the possibility of consecutive sentences where none existed. We concluded that as a result, the remedial holding of Foster does not violate a defendant's due process rights or the ex post facto principles contained therein. Accordingly, Fleming's fourth assigned error is overruled.
 Allied Offenses {¶ 28} In his fifth assigned error, Fleming argues that his convictions for drug possession and drug trafficking are crimes of similar import.
 {¶ 29} In State v. Rance,[18] the Ohio Supreme Court held that two statutory offenses are allied offenses of similar import only if the elements of each offense "correspond to such a degree that the commission of one crime will result in the commission of the other."[19] The Rance test requires a strict textual comparison of the statutory elements, without reference to the particular facts of the case, to determine if one offense requires proof of an element that the other does not. If there are differing elements, the inquiry ends, and multiple convictions and sentences are allowed. *Page 12 
 {¶ 30} Since Rance, this court has held that possession of and trafficking in the same type and quantity of a controlled substance are not allied offenses because when the statutory offenses are compared in the abstract, each requires proof of an additional fact that the other does not.[20] Other districts have also held the offense are not allied offenses.[21]
 {¶ 31} A possession charge requires proof that a person obtained, possessed, or used cocaine.[22] A trafficking charge, under R.C.2925.03(A)(2), requires proof that the offender transported the cocaine knowing or having reasonable cause to believe that the cocaine was intended for sale or resale. Thus, it is possible to possess cocaine without offering it for sale, and it is possible to sell or offer to sell cocaine without having it in one's possession or control.[23]
Therefore, we find the offenses are not allied offenses of similar import. Accordingly, Fleming's fifth assigned error is overruled.
 Ineffective Assistance of Counsel *Page 13 {¶ 32} In his sixth assigned error, Fleming argues he was denied effective assistance of counsel. We disagree.
 {¶ 33} Within this assigned error, Fleming claims the trial court erred by not permitting him to change counsel when he motioned for new counsel after the third day of testimony. Although Fleming hired his attorney, he could not afford to pay the attorney the balance of his fee. The record indicates the attorney agreed to continue to represent him nonetheless. Fleming, however, was unhappy with counsel's cross-examination of Detective Baeppler regarding the car chase and was unhappy that counsel failed to subpoena the moving van driver and another eyewitness who observed the chase from a front porch. Therefore, Fleming requested that the court appoint new counsel to represent him. The trial court refused after noting it was the third day of trial, new counsel would be unprepared for trial, and Fleming's current counsel was a competent and experienced attorney.
 {¶ 34} A trial court's decision on a defendant's motion for substitute counsel will not be reversed absent an abuse of discretion.[24] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[25] *Page 14 
 {¶ 35} While there is a right to competent counsel at the state's expense, we note that an indigent defendant does not have the right to have a particular attorney represent him and, thus, the defendant must show "good cause" for the trial court to replace his current counsel.[26] "`In evaluating a request for substitute counsel, the court must balance `the accused's right to counsel of his choice [against] the public's interest in the prompt and efficient administration of justice.`"[27]
 {¶ 36} Fleming moved for new counsel during the third day of trial. Thus, appellant's motion was untimely.[28] Also, Fleming's motion was, in effect, a motion to continue, as a new attorney would have needed time to prepare for trial. "An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion."[29] In determining whether a trial court abused its discretion when ruling on a motion for continuance, a reviewing court must weigh any potential prejudice to the defendant against the trial court's "right to control its own docket and the public's interest in the prompt and efficient dispatch of justice."[30] *Page 15 
 {¶ 37} As we stated, the trial was more than half-way completed at the time of Fleming's motion. Moreover, there is no evidence that counsel was not effectively representing Fleming. Although Fleming disagreed with the manner in which counsel cross-examined the detective regarding the car chase, Fleming testified in his own behalf; therefore, he was able to recount his version of what transpired. Fleming also contends counsel was ineffective for failing to present testimony of witnesses from the chase. However, there is no evidence that such witnesses existed and no indication what their anticipated testimony would be. Therefore, there is no evidence that prejudice occurred.
 {¶ 38} Moreover, at the conclusion of trial, Fleming stated, "I would like to apologize to my attorney. He was a very good attorney. He did a very good job."[31] Therefore, it appears that Fleming was pleased in the end with the representation he received.
 {¶ 39} In addition to his argument regarding his motion for new counsel, Fleming also contends counsel was ineffective for failing to object to the prosecutor's cross-examination of him as to the detective's veracity and for not raising the ex post facto application of Foster at his sentencing hearing. We addressed these issues in Fleming's second and fourth assigned errors and found *Page 16 
no prejudicial error resulted. Accordingly, Fleming's sixth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, JUDGE
ANN DYKE, J., and
MARY J. BOYLE, J., CONCUR
 APPENDIX
Assignments of Error "I. Terry Fleming was denied his constitutional right to confront the witnesses against him, when the trial court improperly denied his request that the State of Ohio reveal the name of its confidential informant." *Page 17 
 "II. Terry Fleming was denied his constitutional right to a fair trial by repeated prosecutorial misconduct during the state's cross-examination of Mr. Fleming."
 "III. Terry Fleming has been deprived of his liberty without due process of law by his convictions, as they were not based on sufficient evidence to prove his guilt beyond a reasonable doubt."
 "IV. Terry Fleming was denied his constitutional rights of due process and not to be subjected to ex post facto laws by the imposition of sentences in excess of the minimum terms."
 "V. Terry Fleming was denied his constitutional right not to be placed in jeopardy two times for the same offense, by his convictions for possession of drugs and drug trafficking."
 "VI. Terry Fleming was deprived of his constitutional right to effective assistance of counsel by trial counsel's failure to act zealously on behalf of Mr. Fleming in several areas."
[1] See Appendix.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct. Prac.R. II, Section 2(A)(1).
[2] State v. Brown (1992), 64 Ohio St.3d 649, 1992-Ohio-19; State v.Glenn, Cuyahoga App. No. 85055, 2005-Ohio-2009; State v. Richard (Dec. 7, 2000), Cuyahoga App. No. 76796.
[3] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[4] See State v. Williams (1983), 4 Ohio St.3d 74; State v.Patterson, Cuyahoga App. No. 80409, 2003-Ohio-3100.
[5] State v. Williams, supra at 76.
[6] Id.
[7] State v. Feltner (1993), 87 Ohio App.3d 279, 281.
[8] See State v. Patterson, supra; State v. Dakdouk (Mar. 1, 2001), Cuyahoga App. No. 77701; State v. Richard, supra.
[9] State v. Waddell (1996), 75 Ohio St.3d 163, 166,1996-Ohio-100.
[10] State v. Fussell, Cuyahoga App. No. 87739, 2006-Ohio-6438;State v. McCuller, Cuyahoga App. No. 86592, 2006-Ohio-302, at?| 29-30; State v. Carter, Cuyahoga App. No. 84816, 2005-Ohio-2179, at ¶ 23; State v. Curry (Dec. 17, 1992), Cuyahoga App. No. 63438.
[11] 7th Dist. No. 04-MA-148, 2005-Ohio-5480.
[12] (1978), 55 Ohio St.2d 261, syllabus.
[13] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[14] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[15] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[16] 109 Ohio St. 3d 1; 2006-Ohio-856.
[17] State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715;State v. McCollins, Cuyahoga App. No. 88657, 2007-Ohio-2380; State v.Ferko, Cuyahoga App. No. 88182, 2007-Ohio-1588; State v. Brito, Cuyahoga App. No. 88223, 2007-Ohio-1311; State v. Jones, Cuyahoga App. No. 88134,2007-Ohio-1301.
[18] 85 Ohio St.3d 632, 1999-Ohio-291.
[19] Id. at 638.
[20] State v. Lyons (Feb. 3, 2005), Cuyahoga App. No. 84377, 2005-Ohio-392; State v. Bridges, Cuyahoga App. No. 80171, 2002-Ohio-3771, atf75; State v. Fair, Cuyahoga App. No. 82278, 2004-Ohio-2971; State v. Washington, Cuyahoga App. No. 80418, 2002-Ohio-5834.
[21] See State v. Foster, 1st Dist. No. C-050378,2006-Ohio-1567; State v. Alvarez, 12th Dist. No. CA2003-03-067,2004-Ohio-2483, at ¶ 29; State v. Salaam, 1st Dist. No. C-020324, 2003-Ohio-1021, at ¶ 16; State v. Gonzales, 151 Ohio App.3d 160,2002-Ohio-4937, at 1J37.
[22] See R.C. 2925.11.
[23] Bridges, supra at ¶ 75.
[24] State v. Murphy (2001), 91 Ohio St. 3d 516, 523, 2001-Ohio-112;State v. Cowans (1999), 87 Ohio St.3d 68, 73, 1999-Ohio-250.
[25] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[26] State v. Murphy, supra at 523.
[27] Id., quoting United States v. Jennings (C.A.6, 1996),83 F.3d 145, 148.
[28] See State v. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶40.
[29] State v. Unger (1981), 67 Ohio St.2d 65, 67.
[30] Id. at 67.
[31] Tr. at 465. *Page 1