{¶ 1} Appellant, Daniel Seljan, appeals his various drug convictions. After a thorough review of the arguments, and for the reasons set forth below, we affirm.
 {¶ 2} On October 14, 2005, the grand jury indicted appellant on seven counts. Count one charged him with illegal manufacture of drugs under R.C. 2925.04; Count two charged him with the knowing assembly or possession of chemicals used to manufacture drugs under R.C. 2925.041; Count three charged drug possession under R.C. 2925.11; Count four charged drug trafficking under R.C. 2925.03; Count five charged possession of criminal tools under R.C. 2923.24; Count six charged drug possession under R.C. 2925.11; and Count seven charged having weapons while under disability under R.C. 2923.13. Counts three, four, and six carried one-year firearm specifications under R.C. 2941.141. Counts one and four carried schoolyard specifications.
 {¶ 3} On September 20, 2006, a jury trial began; Count seven was tried to the bench. The trial court found appellant guilty of Count seven, and the jury found appellant guilty on all remaining counts and specifications. On March 26, 2007, the trial court sentenced appellant to eight years on Count one, to be served concurrently to five-year terms on Counts two, three, and seven. All counts were to be served concurrently to eight years on Count four, and one year on Counts five and six. The court merged the firearm specifications and imposed a one-year *Page 4 
consecutive term. Overall, appellant received a total of nine years in prison. Appellant filed his notice of appeal on May 9, 2007.
 {¶ 4} The crux of the state's case against appellant was that he had aided and abetted in manufacturing methamphetamine ("meth"). Police found evidence of a meth lab in appellant's basement. On August 25, 2005, Cleveland Police Captain Brian Heffernan received information about a meth lab at appellant's house. The police began a surveillance of the house. Cpt. Heffernan noticed people moving things out of the house into a van. After the van left, a patrol car pulled the driver over for a cracked windshield. The driver, whom Cpt. Heffernan identified as appellant, was arrested for not having a license.
 {¶ 5} According to Cpt. Heffernan, appellant told the police that, although he was addicted to meth, he was not running a meth lab. Appellant gave written consent for the police to search his house. In the basement, the police found chemicals and materials used to make meth.
 {¶ 6} Manon Cernan, a codefendant, testified against appellant. She testified that she lived at appellant's residence and had been using meth and heroin before the police arrived to search the home. She admitted that she is addicted to drugs and did drugs with appellant. She testified that neither she nor appellant made meth. According to Cernan, Tony Barger, another housemate, makes the meth. She testified that, at times, appellant took supplies down to Barger in the basement. Cernan claimed that she and appellant often bought Sudafed for Barger to use in *Page 5 
making the meth. Also, she had seen appellant weighing and packaging the meth. Finally, Cernan testified that she had helped sell the drugs.
 {¶ 7} Thomas Verhiley, from the Cleveland Bureau of Criminal Investigation, testified that he helped with the surveillance and that he noticed a camera outside the home's doorway. He also observed a strong odor of ammonia coming from the house. Verhiley photographed the alleged meth lab and found thermoses containing meth.
 {¶ 8} Officer John Pitts testified that he helped inventory the items in the basement and other parts of appellant's house. He noticed propane tanks in the driveway, and he also saw the thermoses containing meth.
 {¶ 9} Detective Thomas Klammert interviewed Barger, who informed him that meth was sold from the house. Det. Klammert also interviewed appellant, who admitted he had meth at his home, but denied that there was a meth lab. Det. Klammert saw drug paraphernalia throughout the home. According to Det. Klammert, appellant stated that Barger lived in the basement, but that appellant never went down there. In exchange for a place to stay, Barger gave appellant meth. In a written statement, appellant stated that he did shop for pills for Barger a few times, but never helped make the meth and did not know Barger was making meth in the basement.
 {¶ 10} Officers found an operable rifle hanging on appellant's bedroom wall. Appellant's mother, Jacqueline Borgsteadt, testified that the gun had been a present *Page 6 
to Daniel from his father when Daniel was a child. She also testified that, from November 2004 until July 2005, she lived at the house. She claimed that she had the camera installed outside so that she could see who was at the door.
 {¶ 11} Appellant testified that he was addicted to meth. He allowed Barger to live in the house and, in exchange, appellant received a continuous meth supply. Appellant admitted that he ran errands, including buying Sudafed, which he knew was a meth ingredient. Appellant testified that he never before saw the materials the police found, and he never smelled the ammonia odor. Appellant testified that he did not believe Barger ever made meth at the house. He testified that he received the rifle from his father years ago, and he did not know that it was loaded.
 {¶ 12} Barger testified that he was a meth cook and that he stored materials to produce meth in appellant's basement. However, Barger claimed that he never cooked drugs there because he preferred to cook the drugs in the country where no one would notice the smell.
 {¶ 13} Appellant brings this appeal, asserting seven assignments of error for our review.
 Insufficient Evidence {¶ 14} "I. Appellant was deprived of his liberty without due process of law, where the evidence failed to prove that he was guilty of the firearm specification as charged under R.C. 2941.141." *Page 7 
 {¶ 15} Appellant argues that there was insufficient evidence to convict him of a firearm specification. More specifically, he alleges that there was insufficient evidence that the rifle was "on or about his person" or "under his control" while he possessed or trafficked in meth or possessed cocaine. This argument is without merit.
 {¶ 16} In State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 17} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [(1979)],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph 2 of the syllabus.
 {¶ 18} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case.Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 462 N.E.2d 407. *Page 8 
 {¶ 19} Under R.C. 2941.145, a defendant is guilty of a firearm specification if he had "a firearm on or about [his] person or under [his] control while committing [an offense]." It is undisputed that a loaded, operable firearm was found on appellant's bedroom wall. Further, appellant admitted that he owned the gun. However, appellant argues that the gun was not under his control. According to appellant, there was no testimony that he "touched the weapon, let alone used it in connection with any aspect of the offense."
 {¶ 20} In State v. Benton, Cuyahoga App. No. 82810, 2004-Ohio-3116, this court upheld a conviction on a firearm specification where the defendant's car contained drugs and a gun. In that case, the defendant "was in possession of both the cocaine and the gun before police arrived * * * Thus, though the gun was not carried on his person or even immediately accessible to him * * * [his] admission that the gun belonged to him was an admission that he had control of the gun `at some point' during the commission of the underlying drug offense." Id.
 {¶ 21} In the case before us, police found cocaine and drug paraphernalia in appellant's bedroom; therefore, appellant had control of, and access to, the firearm while he possessed cocaine (Count six). Further, meth paraphernalia, on which the meth possession and trafficking charges (Counts three and four) were based, was found in various parts of the house. Specifically, meth and a scale were found in another bedroom near appellant's bedroom where the gun was located, which *Page 9 
supports the fact that the firearm was under appellant's control while committing the offenses. Additionally, appellant admits that he owns the gun.
 {¶ 22} A review of the evidence shows that there was sufficient evidence to convict appellant of the firearm specification. Accordingly, appellant's first assignment of error is overruled.
 Manifest Weight {¶ 23} "II. Appellant was deprived of liberty without due process of law, where his conviction for drug trafficking is against the manifest weight of the evidence."
 {¶ 24} Appellant argues that his drug trafficking conviction was against the manifest weight of the evidence. More specifically, he alleges that only one witness testified against him on this count. This argument is without merit.
 {¶ 25} Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 26} It is important to note that the weight of the evidence and the credibility of witnesses are issues primarily for the trier of fact.State v. DeHass, (1967), *Page 10 10 Ohio St.2d 230, 227 N.E.2d 212; State v. Thompkins, (1997),78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169,383 N.E.2d 132.
 {¶ 27} Under R.C. 2925.03, no person shall knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, knowing that such drug was intended for sale. According to appellant, the only evidence on this charge came from the testimony of codefendant Manon Cernan. Appellant contends that Cernan's testimony was not credible because she is a drug addict who the police found in a "heroin-induced stupor."
 {¶ 28} Cernan testified that Barger made the meth and gave it to appellant to use for himself. She claimed that appellant shopped for Barger's supplies to make the meth. She also testified that appellant helped weigh and package the meth. Appellant argues that this testimony is inconsistent with appellant's and Barger's denial that appellant helped package the drugs. Appellant further contends that Cernan's testimony is unreliable because she was simply looking for a deal from the state on her own drug charges.
 {¶ 29} However, the facts show that Cernan's testimony was not the only evidence against appellant on drug trafficking. Appellant was charged as an aider and abettor of drug trafficking. The state provided testimony that drugs, intended for *Page 11 
resale, were found in his home. Barger and Cernan testified that they sold meth from the home. Cernan testified that Barger operated a meth lab in appellant's basement. Appellant testified that he bought ingredients for Barger. Cernan's testimony that appellant helped package meth is also supported by the vast amount of meth that was found in the house.
 {¶ 30} The jury was presented with evidence from the state and appellant and was in the best position to weigh all of the evidence, Cernan's credibility in particular. We cannot say that the jury lost its way. Accordingly, appellant's second assignment of error is overruled.
 Jury Instructions {¶ 31} "III. The trial court violated Mr. Seljan's right to due process and a fair trial as guaranteed by the Fifth, Sixth andFourteenth Amendments of the Constitution by failing to instruct the jury concerning how it should weigh accomplice Manon Cernan's testimony."
 {¶ 32} Appellant argues that the trial court erred when it failed to instruct the jury on how it should weigh Cernan's testimony. More specifically, he argues that the outcome of his conviction for drug trafficking would have been different if the judge had given the instruction. This argument is without merit.
 {¶ 33} Appellant alleges that the court should have instructed the jury about the potential bias of Cernan's testimony. Trial counsel did not request a jury *Page 12 
instruction to caution the jury on the weight of Cernan's testimony; therefore, any error is deemed to have been waived unless it constitutes plain error.
 {¶ 34} To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon, (1995),102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163,1996-Ohio-100, 166, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995),74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643.
 {¶ 35} Even if the trial judge had given the instruction appellant now requests, the outcome of the trial would not have been different on the conviction of drug trafficking. As discussed above, there was overwhelming evidence, including evidence beyond Cernan's testimony, that appellant was guilty of drug trafficking. Further, the trial court gave the jury an instruction about examining the credibility of a witness by stating, "You must consider the credibility of the witnesses who testified." Therefore, we cannot say that the outcome of the trial would have been different if the judge had given the specific instruction appellant is now requesting. Accordingly, appellant's third assignment of error should be overruled. *Page 13 
 Merger of Offenses {¶ 36} "IV. The manufacturing charge in count one should have merged with the assembly charge in count two and the possession charge in count three should have merged with the trafficking charge in count four because they were allied offenses of similar import."
 {¶ 37} Appellant argues that the trial court erred when it failed to merge counts as allied offenses. More specifically, he alleges that Counts one (drug manufacturing) and two (drug assembly) should have merged, and Counts three (drug possession) and four (drug trafficking) should have merged. These arguments are without merit.
 {¶ 38} In State v. Rance (1999), 85 Ohio St.3d 632, 1999-Ohio-291,710 N.E.2d 699, the Ohio Supreme Court recently reconsidered the issue of how to apply R.C. 2941.25(A) when determining whether two or more offenses constitute allied offenses of similar import. Prior toRance, the test used by the courts was as set forth in Newark v.Vazirani (1990), 48 Ohio St.3d 81, 549 N.E.2d 520, syllabus, overruled,Rance, supra.
 {¶ 39} Under R.C. 2941.25, a two-tiered test must be undertaken to determine whether two or more crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import, and the *Page 14 
court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
 {¶ 40} In Vazirani, the Court compared the elements of the two crimes charged by reference to the particular facts alleged in the indictment.Vazirani at 83. Later cases compared the elements of the charged offenses in the abstract without reference to facts alleged in the indictment. State v. Richey (1992), 64 Ohio St.3d 353, 369,1992-Ohio-44, 595 N.E.2d 915, rehearing denied, 65 Ohio St.3d 1421, certiorari denied (1993), 507 U.S. 989, 113 S.Ct. 1592,123 L.Ed. 2d 157, rehearing denied, 508 U.S. 934, 113 S.Ct. 2401, 124 L.Ed. 2d 303.
 {¶ 41} In Ranee, the Ohio Supreme Court reconsidered whether the elements test should be conducted in terms of the facts of the specific case or in terms of the statutory elements of the offenses in the abstract. The Court ruled that an analysis of the elements in the abstract was proper, overruling Vazirani and language to the contrary in other cases. Ranee, supra, paragraph one of the syllabus. UnderRanee, when determining whether two or more offenses are allied offenses of similar import, the court should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. And if *Page 15 
the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. R.C. 2941.25(B). Id. at 638-639.
 {¶ 42} Appellant first argues that drug manufacturing and drug assembly should merge. Under R.C. 2925.04(A), "no person shall knowingly cultivate marijuana or knowingly manufacture or otherwise engage in any part of the production of controlled substance." Here, the controlled substance is meth.
 {¶ 43} Under R.C. 2925.041(A), "no person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section2925.04 of the Revised Code."
 {¶ 44} It is clear that these offenses are not allied offenses because the commission of one crime will not result in the commission of another. A violation of R.C. 2925.04 does not necessarily result in the violation of R.C. 2925.041. Appellant obtained Sudafed for the manufacture of meth and was found guilty of R.C. 2925.041. However, R.C.2925.04 prohibits many activities in connection with cultivating a controlled substance. Here, appellant provided his house to manufacture meth. Therefore, Counts one and two are not allied offenses of similar import.
 {¶ 45} Finally, appellant alleges that drug possession and drug trafficking are allied offenses of similar import. However, in State v.Fleming, Cuyahoga App. No. *Page 16 
88442, 2007-Ohio-3645, this court held that "possession of and trafficking in the same type and quantify of a controlled substance are not allied offenses because when the statutory offenses are compared * * * each requires proof of an additional fact that the other does not." Possession requires that appellant obtained, possessed, or used a controlled substance. Trafficking requires that appellant transported a controlled substance knowing that it was intended for sale. Id. "Thus, it is possible to possess cocaine without offering it for sale, and it is possible to sell or offer cocaine without having it in one's possession or control." Id. Therefore, Counts three and four are not allied offenses of similar import. Accordingly, appellant's fourth assignment of error is overruled.
 Sentence {¶ 46} "V. Sentence imposed was unconstitutionally disparate to that imposed on Mr. Seljan's more culpable codefendant.
 {¶ 47} "VI. Appellant was denied his liberty without due process of law when he was sentenced under a judicially altered, retroactively applied, and substantially disadvantageous statutory framework."
 {¶ 48} Because assignments of error five and six are substantially interrelated, they shall be addressed together. Appellant argues that the trial court did not consider R.C. 2929.11 and R.C. 2929.12 when determining his sentence. Appellant also argues that the application ofState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, *Page 17 845 N.E.2d 470, to his case violates the ex post facto clause. This argument is without merit.
 {¶ 49} The Ohio Supreme Court's recent decision in Foster renders appellant's assignments of error without merit. In Foster, the Court found several sections of the revised code unconstitutional and severed the offending portions from the statutes. As a result, trial courts now have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or state reasons for imposing more than the minimum sentences. Foster, supra.
 {¶ 50} In exercising its discretion, the court must consider R.C.2929.11 and R.C. 2929.12. R.C. 2929.11 specifies the purpose of sentencing, and R.C. 2929.12 provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. State v. Mathis, 109 Ohio St.3d 54, 62, 2006-Ohio-855,846 N.E.2d 1. However, these statutes do not require judicial fact-finding.Foster, supra at 14. "Rather, the sentencing court must merely consider the statutory factors. * * * We will uphold a sentence on appeal unless it is clear and convincing that the record does not support the sentence or it is contrary to law." State v. Goins, Cuyahoga App. No. 89232,2007-Ohio-6310.
 {¶ 51} A thorough review shows that appellant's sentence is clearly and convincingly supported by the record. Appellant contends that he is similarly situated to Barger and that his nine-year sentence is disparate to Barger's four-year sentence; however, Barger's sentence was the result of a plea bargain with the *Page 18 
state. Appellant chose to try his case to a jury. Further, appellant has a criminal history; repeatedly denied his culpability; and fled after being found guilty. These factors support his sentence.
 {¶ 52} After reviewing the record, we find that the trial court's imposition of appellant's sentence was guided by the overriding purposes of felony sentencing: to protect the public from future crime and to punish the offender. R.C. 2929.11.
 {¶ 53} Appellant also argues that Foster does not apply to defendants whose alleged criminal conduct pre-dates Foster because it would be a violation of the ex post facto clause. If Foster did not apply to appellant, he would enjoy a presumption of minimum concurrent sentencing. The ex post facto clause of Article 1, Section 10, of the United States Constitution prohibits any legislation that "changes the punishment, and inflicts greater punishment, than the law annexed to the crime, when committed." Miller v. Florida (1987), 482 U.S. 423, 429,107 S.Ct. 2446, 96 L.Ed.2d 351, quoting Calder v. Bull (1798), 3 U.S. 386, 3 Dallas 386, 390, 1 L.Ed.648.
 {¶ 54} This court recently addressed this issue and, after a thorough analysis of state and federal law, found as follows: "In the instant case, Mallette had notice that the sentencing range was the same at the time he committed the offenses as when he was sentenced. Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where *Page 19 
none existed. As a result, we conclude that the remedial holding ofFoster does not violate Mallette's due process rights or the ex post facto principles contained therein." State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715.
 {¶ 55} In the instant case, appellant had notice regarding the sentencing range, which was the same at the time of the offenses as when he was sentenced. Because we find that the holding of Mallette, supra, directly applies to the instant matter, we adopt the Mallette court's holding. We therefore find that the remedial holding of Foster does not violate appellant's due process rights or the ex post facto principles contained therein. Accordingly, appellant's fifth and sixth assignment of error are overruled.
 Ineffective Assistance of Counsel {¶ 56} "VII. Mr. Seljan's Sixth Amendment right to the effective assistance of counsel was violated where trial counsel failed to advocate sufficiently on his client's behalf."
 {¶ 57} Appellant argues that he was denied effective assistance of counsel. More specifically, he alleges that his defense counsel was ineffective for failing to request an accomplice testimony instruction; for failing to request a merger of the offenses; and for failing to object to his "disproportionate" sentence. This argument is without merit.
 {¶ 58} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel *Page 20 
was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Brooks (1986),25 Ohio St.3d 144, 495 N.E.2d 407.
 {¶ 59} In reviewing a claim of ineffective assistance of counsel, itmust be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 477 N.E.2d 1128; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164.
 {¶ 60} The Ohio Supreme Court held in State v. Bradley (1989),42 Ohio St.3d 136, 141-142, 538 N.E.2d 373, that: "`When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.' State v. Lytle (1976),48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States supreme Court inStrickland v. Washington (1984), 466 U.S. 668. * * *
 {¶ 61} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. `An error by counsel, even if *Page 21 
professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf.United States v. Morrison, 449 U.S. 361, 364-365 (1981).'Strickland, supra, at 691. To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability
 {¶ 62} sufficient to undermine confidence in the outcome.'Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *.
 {¶ 63} "Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 64} Appellant argues that his defense counsel's failure to request certain jury instructions, to request a merger of the offenses, and to object to his disproportionate sentence made his counsel ineffective. However, as discussed in the various assignments of error above, all of appellant's arguments are without merit. Therefore, counsel was not ineffective regarding those issues. Accordingly, appellant's seventh assignment of error is overruled.
Judgment affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 22 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1